AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| | ) | Case No. 3:19mj081 |
| TERRY DEON ROBINSON | ) | |
| | ) | |
| | ) | |
| *Defendant(s)* | | |

FILED
RICHARD W. NAGEL
CLERK OF COURT
2019 FEB 13 PM 2:39
U.S. DISTRICT COURT
SOUTHERN DIST. OHIO

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of **February 12, 2019** in the county of **Montgomery** in the **Southern** District of **Ohio**, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(g)(1) | felon in possession of a firearm. |

This criminal complaint is based on these facts:

See Attached Affidavit

☑ Continued on the attached sheet.

_____
Complainant's signature

TFO Frederick D. Zollers, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 2/13/19

_____
Judge's signature

City and state: Dayton, Ohio
Michael J. Newman, U.S. Magistrate Judge
*Printed name and title*

**AFFIDAVIT**

Your Affiant, Frederick D. Zollers, being duly sworn, does hereby depose and state as follows:

## I.

## INTRODUCTION

1. I am a sworn law enforcement officer in the State of Ohio for over twelve (12) years. I am presently a sworn member of the Montgomery County Sheriff's Office. I am currently assigned to the Federal Bureau of Investigation's (FBI) Southern Ohio Safe Streets Task Force (SOSSTF) as a Task Force Officer (TFO). I have received training in drug trafficking investigations and have participated in numerous narcotics-related investigations (ultimately leading to successful prosecution) that involved surveillance, gathering evidence of money laundering, interviewing suspected drug traffickers, and supervising the activities of informants who provided information and assistance which resulted in the seizure of narcotics. I have conducted numerous investigations into the unlawful distribution and possession of controlled substances; use and possession of firearms. Based on my training and experience, I am familiar with federal drug laws, and I am aware that it is a violation of Title 21, United States Code, Sections 841(a)(1) and 846 to knowingly and intentionally distribute and possess with intent to distribute controlled substances (including heroin, fentanyl, cocaine, and methamphetamine), as well as to conspire to do the same. Further, I am familiar with federal firearms laws, and I am aware that possessing firearms in furtherance of a drug trafficking crime is a violation of Title 18, United States Code, Section 924(c)(1)(A). In addition, I am aware the possession of a firearm by a convicted felon is a violation of Title 18, United States Code, Section 922(g)(1).

1

II.

**PURPOSE OF AFFIDAVIT**

2. This Affidavit is made in support of an arrest warrant for **TERRY DEON ROBINSON** (hereinafter "**ROBINSON**"). My knowledge of this investigation is based upon my own personal observations, as well as the observations and investigation conducted by other law enforcement officers knowledgeable of the facts and circumstances involved in subject investigation. I have not included in this Affidavit all the facts known to me, but only that information sufficient to establish probable cause to believe that **ROBINSON** has committed a violation of 18 U.S.C. § 922(g)(1), that is being a "felon in possession of a firearm."

III.

**SUMMARY OF PROBABLE CAUSE**

3. Unless otherwise noted, when I assert that a statement was made, I received the information from a law enforcement officer who provided the information to me, either verbally or in a written report. The officer providing me with the information may have received the information by way of personal knowledge or from another source.

4. In December 2018 and continuing thereafter, members of the Regional Agencies Narcotics and Gun Enforcement (RANGE) Task Force participated in a drug trafficking investigation involving **ROBINSON** selling illegal drugs to include heroin and/or fentanyl in the Dayton, Ohio area.

5. During the month of December 2018, RANGE Task Force Confidential Informant (hereinafter "CI") advised Detective Sean Humphrey that he/she had made contact with a

2

male driving a silver Chevrolet Malibu. The male provided the CI with his phone number for the purpose of future purchases of illegal drugs. The CI provided Detective Humphrey the phone number (937) 818-9798 for the male. A RANGE Task Force intelligence analyst was able to find a direct link between the above phone number and social media sites belonging to **ROBINSON**. The CI is considered credible as he/she has previously provided information that investigators were able to corroborate through independent investigation leading to the seizure of narcotics, firearms, U.S. currency and successful prosecution.

6. On or about December 14, 2018, Detective Humphrey showed the CI a jail booking photograph of **ROBINSON**. The CI was able to positively identify **ROBINSON** as the male that had provided him/her with the phone number (937) 818-9798.

7. On or about January 29, 2019, the CI, under the direction and control of Detective Humphrey, called (937) 818-9798 and arranged to purchase a quantity of heroin and/or fentanyl. The CI's person and vehicle were searched and no contraband was found. The CI was provided with buy funds and a transmitter. The CI was directed to 4460 Curundu Avenue, Trotwood, Ohio. The CI was followed to the address by RANGE Task Force detectives.

8. After arriving at the 4460 Curundu Avenue address, the CI made contact with the male, who had walked from inside of 4460 Curundu Avenue, and exchanged the buy funds for the suspected drugs. After the exchange, the CI was followed from the residence to a predetermined meeting location. The CI turned over the purchased drugs to Detective Humphrey. The CI's person and vehicle were again searched and no contraband was found. The CI verified the male was **ROBINSON** that sold him/her the drugs. The

suspected drugs were submitted to the Miami Valley Regional Crime Laboratory to be analyzed for content. Lab results are pending.

9. On or about February 8, 2019, the CI, under the direction and control of Detective Humphrey, called (937) 818-9798 and arranged to purchase a quantity of heroin and/or fentanyl. The CI's person and vehicle were searched and no contraband was found. The CI was provided with buy funds and a transmitter. The CI was directed to Annapolis Avenue. The CI was followed to the area by RANGE Task Force detectives.

10. As the CI neared the area of Annapolis Avenue, Sergeant Ables observed a silver Hyundai Elantra pull out of the driveway of 4460 Curundu Avenue and drive toward the CI. Moments later, **ROBINSON** arrived in the Elantra and made contact with the CI. **ROBINSON** exchanged the suspected drugs for the buy funds with the CI. **ROBINSON** drove back to 4460 Curundu Avenue where he parked the Elantra in the driveway.

11. After the exchange, the CI was followed to a predetermined meeting location. The CI turned over the purchased drugs to Detective Humphrey. The CI's person and vehicle were again searched and no contraband was found. The CI verified the male was **ROBINSON** that sold him/her the drugs. Detective Hutson field tested the suspected drugs and it tested positive for the presence of fentanyl. The suspected drugs were submitted to the MVRCL to be analyzed for content. Lab results are pending.

12. On February 11, 2019, Detective Anthony Hutson obtained a state search warrant for the address of 4460 Curundu Avenue, Trotwood, Ohio. The search warrant was authorized by the Honorable Montgomery County Municipal Court Western Division Judge James Piergies. On February 12, 2019, RANGE Task Force members executed the search warrant at 4460 Curundu Avenue. **ROBINSON** was located and detained inside the residence. No

4

other individuals were located inside the residence.

13. Pursuant to the search warrant, task force members conducted a thorough search of the residence. Task force members located and seized several items, to include, but not limited to: a loaded Smith & Wesson SD40, .40 caliber pistol (serial number DVV3505); a loaded American Tactical, Multi-Cal, AR-15 pistol (serial number NS125760); and a loaded Cobra CA380, .380 caliber pistol (serial number CP125630). The Smith & Wesson pistol was loaded with fourteen (14) rounds in the magazine and one (1) round in the chamber and the American Tactical AR-15 pistol was loaded with forty-five (45) rounds in the high capacity drum magazine and one (1) round in the chamber. The Smith & Wesson pistol was located under a pillow on the bed and the American Tactical AR-15 pistol was located on the floor under the bed, both found in the master bedroom. Possessory items in **ROBINSON's** name were located in the master bedroom. The matching hoodie of the outfit to the pants that **ROBINSON** was wearing when arrested was located on the bed in the master bedroom. The Cobra pistol was loaded with five (5) rounds in the magazine and was located in the closet of an apparent children's room west of the master bedroom.

14. In addition to the firearms, task force members located three baggies of suspected heroin and/or fentanyl in a box on the floor in the master bedroom. The three baggies totaled an approximate field weight of 55 grams. Other suspected drugs, ammunition, magazines and drug paraphernalia consistent with drug trafficking were located throughout the residence. The suspected drugs and firearms were submitted to the MVRCL for analysis and operability testing. Labs results are pending.

15. Detective Samuel Hemingway conducted a post-Miranda interview with **ROBINSON**. During the course of the interview, **ROBINSON** advised that he stays at the residence and has clothing and other items in the back bedroom. **ROBINSON** advised that he sells drugs. **ROBINSON** advised that his fingerprints would be on the guns found inside the residence. **ROBINSON** advised the guns were used for protection. **ROBINSON** advised his DNA would be on the baggies of drugs located inside the residence.

16. I subsequently spoke with Special Agent (SA) Kenneth Pitney of the Bureau of Alcohol, Tobacco, Firearms, and Explosives, who has training and experience in determining a firearm's place of manufacture. SA Pitney advised that the Smith & Wesson, American Tactical and Cobra firearms were manufactured outside the state of Ohio.

17. Based on a review of **ROBINSON's** criminal history, I know that **ROBINSON** has prior felony convictions (punishable by greater than one year in prison). These include:

    a) on or about February 12, 2014, in United States District Court, Southern District of Ohio at Dayton, Case Number 3:12CR041, for "Distribution of a Mixture or Substance Containing a Detectable Amount of Heroin."

    b) on or about May 26, 2009, in Montgomery County, Ohio Common Pleas Court, Case Number 2008CR02713, for "Possession of Cocaine."

18. Based on the facts set forth in the Affidavit, there is probable cause to believe that, on or about February 12, 2019, in the Southern District of Ohio, **ROBINSON** committed a violation of 18 U.S.C. § 922(g)(1) (felon in possession of a firearm).

Further your Affiant sayeth naught.

                                            Frederick D. Zollers, Task Force Officer
Federal Bureau of Investigation
Southern Ohio Safe Streets Task Force

Subscribed and sworn to before me this 13th day of February, 2019.

HONORABLE MICHAEL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE